**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

DOUGLAS LYNCH, JARIEL ARIAS, KYLE
JOHNSON, JANNA LAVERDIERE, ROBERT
MAHON, JORDAN POTTS, and JEFFREY
SANDERS, individually, and on behalf of all
others similarly situated,

                    Plaintiffs,

v.

MOTOROLA MOBILITY LLC d/b/a MOTOROLA
and LENOVO (UNITED STATES) INC.,

                    Defendants.

**FIRST AMENDED CLASS
ACTION COMPLAINT**

**JURY DEMAND**

Case No: 16-cv-04524

Hon. Gary Feinerman

Plaintiffs DOUGLAS LYNCH, JARIEL ARIAS, KYLE JOHNSON, JANNA LAVERDIERE,

ROBERT MAHON, JORDAN POTTS, and JEFFREY SANDERS ("Plaintiffs"), individually and on

behalf of all others similarly situated, allege as follows:

**I.      NATURE OF THE ACTION**

1.      This is an action for breach of warranty, unfair business conduct, and unjust

enrichment arising from the failure of Defendant Motorola Mobility LLC ("Motorola") to

comply with its obligations under its express warranty to purchasers of Motorola smart

phones, smart watches, and other products ("Devices").

2.      Motorola expressly warrants to purchasers of all Devices that the Devices are

free of defects.  Motorola warrants that if a defect develops within 12 months of purchase, it

will (1) repair the Device using new, used, or reconditioned replacement parts; (2) replace

the Device with a new or "as new" reconditioned Device; or (3) refund the purchase price of

the Device.  Motorola breached this express warranty by failing to adequately repair,

replace, or refund the purchase price of Plaintiffs' Devices, and many other Devices owned by Class members, that failed within 12 months of purchase.

3.     Complaints of Motorola's inadequate warranty performance increased sharply after October 2014, when Defendant Lenovo (United States) Inc. ("Lenovo") acquired Motorola.  Motorola has replaced many consumers' defective Devices with Devices that function no better, and sometimes worse, than the original defective Devices.  Many consumers with defective Devices had to send them in to Motorola multiple times—costing consumers weeks or months of usage and causing those who depend on these Devices to buy replacements.  Motorola's warranty department also lost Devices sent in for repairs, which further delayed the warranty process and made repairs or replacement impossible. Motorola replaced many consumers' defective Devices with different and/or cheaper models lacking features that contributed to the original purchase decisions.  Other consumers paid Motorola a service fee and security hold charge of up to $500 for repairs under Motorola's Advanced Exchange program.  Despite Motorola's representations, this program was no faster or more effective than Motorola's standard, slow, and ineffectual warranty process, and Motorola failed to refund security hold charges paid by consumers in this program.  Likewise, Motorola refused to issue refunds to consumers whose Devices under warranty it did not repair or replace.  As a result of Motorola's conduct, consumers lost dozens of hours dealing with Motorola's warranty department, went weeks or months without functioning Devices, and spent hundreds of dollars on replacement devices and unreimbursed fees.  Plaintiffs bring this action to obtain their damages as well as injunctive relief for similarly situated consumers.

## II.    PARTIES

4.    Plaintiff Jariel Arias is a resident and citizen of the state of Florida.

5.    Plaintiff Kyle Johnson is a resident and citizen of the state of Texas.

6.    Plaintiff Janna Laverdiere is a resident and citizen of the state of Massachusetts.

7.    Plaintiff Douglas Lynch is a resident and citizen of the state of Georgia.

8.    Plaintiff Robert Mahon is a resident and citizen of the state of Florida.

9.    Plaintiff Jordan Potts is a resident and citizen of the state of Arizona.

10.    Plaintiff Jeffrey Sanders is a resident and citizen of the state of Florida.

11.    Defendant Motorola Mobility LLC ("Motorola") is a Delaware corporation with its principal place of business in Chicago, Illinois.  Motorola is a wholly owned subsidiary of Lenovo (United States) Inc.

12.    Defendant Lenovo (United States) Inc. ("Lenovo") is a Delaware corporation with its principal place of business in Morrisville, North Carolina.  Lenovo is a wholly-owned subsidiary of Lenovo Holding Company, Inc., a subsidiary of Lenovo Group Limited, which is a Hong Kong corporation with its principal place of business in Beijing, China. Lenovo Group Limited, in turn, is a principal subsidiary of Legend Holdings Limited, a Beijing-based conglomerate whose largest shareholder is the Chinese government.

## III.    JURISDICTION AND VENUE

13.    The Court has jurisdiction over this action pursuant to 15 U.S.C. § 2310(d) based on Plaintiffs' claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* Supplemental jurisdiction over Plaintiffs' state-law claims exists under 28 U.S.C. § 1367.

3

14.     This Court also has jurisdiction over this action pursuant to the Class Action

Fairness Act, 28 U.S.C. § 1332(d), because this is a proposed class action in which: (1) there

are at least 100 Class members; (2) the combined claims of Class members exceed

$5,000,000, exclusive of interest, attorneys' fees, and costs, and (3) Plaintiffs and

Defendants are domiciled in different states.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Motorola's

principal place of business is within this District and a substantial part of the events or

omissions giving rise to the claims occurred here.

## IV.     FACTUAL ALLEGATIONS

### A.     Motorola Manufactures a Variety of Personal Electronic Devices.

16.     Motorola manufactures, markets, sells, and warranties personal electronic

Devices, including cellular phones, smart watches, cellular phone accessories, wireless

speakers, home phones, home monitoring devices, and baby monitors.

17.     The cellular phones that Motorola manufactures, markets, sells, and

warranties are sold under the "Moto" or "Droid" brands.  Motorola sells four Moto phones:

the Moto X Pure Edition, the Moto G, the Moto E, and the Moto X.  Motorola also sells four

Droid phones: the Droid Mini, the Droid Turbo, the Droid Turbo 2, and the Droid Maxx 2.

18.     Motorola sells a range of products that communicate with or augment these

smart phones.  Among these products is the Moto 360 Smart Watch, a digital watch that can

communicate with cellular phones to allow e-mails, text messages, and calendar alerts to be

displayed on the Moto 360.  Though the technology in each Moto 360 Smart Watch is

identical, Motorola offers a variety of customizable features, such as a $50 metal watchband

4

and other embellishments that can increase the price of the Moto 360 from its $299.99 starting price to approximately $450.

19.     In an online consumer survey, 96 of 414 (23.2%) of Moto 360 owners reported that the plastic back of their Moto 360 had cracked as of October 2014.  In 2015, Motorola redesigned the Moto 360 because of the unusually high failure rate associated with its plastic back plate.

**B.     Motorola's Warranty**

20.     All Motorola products are covered by Motorola's Global Limited Warranty (the "Warranty"), which is incorporated by reference into this complaint.  A true and correct copy of the Warranty is attached as Exhibit A.

21.     Motorola's Warranty promises original purchasers of Motorola products that the products will be free of defects for 12 months after purchase.

22.     With respect to products that manifest defects within 12 months after purchase, Motorola promises in its Warranty that it will do one of the following, in its discretion: "(1) repair the Product using new, used or reconditioned replacement parts; or (2) replace the Product with a new or 'as new' reconditioned Product; or (3) refund the purchase price."

23.     In its Warranty, Motorola directs consumers with defective products to:

a.     attempt to troubleshoot the problem online using instructions at Motorola.com;

b.     download software updates; or,

5

c.      if these measures do not work, "contact Motorola using the contact details provided on the customer support website at [insert url]" [sic].

24.     Motorola's direction to customers seeking warranty assistance to visit a website address described only as "[insert url]" has led to consumer confusion, and prevented some customers with warranty claims from reaching Motorola for warranty service.

**C.      Motorola's Post-Warranty Repair Program**

25.     Motorola also offers a repair program through its warranty department to consumers who own a Device that fails or requires repair after the warranty period expires.

26.     Motorola markets this repair program as a way for consumers to obtain repairs for Devices that are damaged or manifest a Defect outside of the warranty period.

27.     Motorola charges consumers approximately $195 for such out-of-warranty repairs.

**D.      Summary of Motorola's Inadequate Warranty Performance**

28.     The relief afforded by Motorola to consumers with defective Devices under warranty is inadequate and inconsistent with the promises in the Warranty.

29.     Motorola does not adequately repair, replace, or refund the purchase price of defective Devices under warranty.  Motorola replaces such Devices with Devices that contain defects of their own.

30.     Motorola fails to promptly deliver repairs or replacements to consumers. Motorola's remedial measures for failing Devices under warranty are not provided to

6

consumers until several weeks or months after they initiate contact with Motorola regarding the problem.

31. Motorola disseminates inaccurate information regarding the timing of warranty relief.

32. Motorola sells an "Advanced Exchange" program to consumers covered by its Warranty and then fails to satisfy the terms of that program.

33. Motorola's service under its out-of-warranty repair program fails to uphold the terms of that program.

**E. Consumers' Experiences with Motorola's Inadequate Performance**

34. In October 2014, Lenovo acquired Motorola, and the number of complaints about Motorola appearing on consumer complaint websites such as consumeraffairs.com increased almost immediately.



35.     Motorola's overall rating on Consumer Affairs' website is 1 out of 5 stars.



36.     A sampling of consumer complaints from Consumer Affairs demonstrates the

widespread nature of Motorola's failure to perform its warranty obligations.

| 3/23/2016 | I have sent my phone back for replacement 3 times now and am awaiting my 4th phone (Moto X Pure) to arrive in the mail using the advance exchange program. They do not send you a new phone as a replacement .... They will send you a used phone that they have not tested except for some program they run on the phone that apparently does not find the defects that I have experienced. The first two replacement phones would not receive any signal and the third phone records static with videos recorded by the phone. I discovered they send used phones when I discovered a dent on the charging port of the 3rd replacement phone (along with the static problem). My conclusion is that they stockpile used phones customers return and send them back to customers who request an exchange. They do not seem to put any effort into checking the phones workings. This opinion was verified today while talking to the escalated service repair team. She told me she would make a note on my service request that they test my phone before sending it to me... This is not standard procedure then, to check the used phones they send to you as a replacement for your new phone. [I] will not be buying Motorola again due to poor business practices. I hope you read this before experiencing the same story as me and the others on this site. |
| --- | --- |

3/18/2016     I purchased Moto X Pure edition which arrived on 2/25/2016. Within 5 days, I called Motorola because there was always buzzing/static sound while I was on the phone. The customer service told me I could get a replacement since it was within 14 days. I didn't get RMA for 2 days after that until I asked about it again. So, on 3/10/16, I got a replacement which also had the same problem after installing its update. Since 14 days return period passed for waiting for the replacement, Motorola refused to refund me. Their next offer was to have it repaired or to send me another replacement with $500 credit hold on my credit card until they receive the replacement back. I took repair since there was no way to give them my credit card information again. Now I'm sending back the phone for repair but not expecting much based on all other reviews I read here. I would be lucky if I get a fully functional phone back.

3/11/2016     Don't ever buy a Motorola phone. I bought a phone which was defective, changed it under warranty which again fell through in 3 months. They send me another phone and this time the new phone did not have a back cover. Within 6 months, I had 3 exchange and out of 6 months was without a phone for 2 months, because of their carelessness. Their phones don't last for 3 months and then they send such quality product that the phone doesn't have a back cover.

2/26/2016     STAY AWAY FROM THE REPAIR SERVICE, seek another company! They tell you that they will have your phone back in a week and for me it has been a month! It's very frustrating because I'm starting a new job and they have no way of contacting me! The operators are difficult to understand and they tell you lies! They told me that I would receive my phone last week and now they are saying that I will receive it next week, there is a poor communication system with their business. I have never received such horrible service!!! Next time I will seek another repair service even if it's double the cost.

| | |
|---|---|
| 2/8/2016 | Last December the screen of my Moto X Pure got cracked. The repair service request process was smooth. I got my shipping label just a few minutes after I submitted the request, and then I shipped it through FedEx, but this is where all the good things ended. I shipped my phone on 12/28/2015, and now is 2/08/2016. I have not gotten my phone back. I called the customer service a few times, and the agents kept telling me that they do not have the parts in stock and therefore cannot fix my phone. This is RIDICULOUS. The irony is that they said on their website that "we stand by our products and we're going to do our best to fix or replace it – fast." ... |
| 1/30/2016 | Bought a Moto X in October and truly loved the phone. Then I broke the screen. Called Motorola and they said send it in, $60 and 5 days I'll have it back. It's now been nearly 4 months, multiple calls they keep telling me they're backed up. Can't talk to a supervisor, they will not reduce the fee or offer any concessions. To make it worse, they said I won't get my actual phone but a refurbished replacement that may not be the same color... IF I ever actually get it back. I feel like they stole my phone and I'll never get it back. What should I do? Can you call the police? ... Worst customer service experience in my entire life. |
| 1/27/2016 | I contacted Motorola to repair my wife's Moto X which had a broken screen. I sent them the phone and paid for the repair on December 9, 2015. I was told it would take 3-6 days and we'd get the phone back. I have called repeatedly to get updates since and still no phone. My wife's phone was a nice custom Moto X Maker with custom colors and 32GB of storage. On the first update I called to ask where the phone was and was informed they couldn't find a suitable replacement. I learned we wouldn't get the original phone back and that she would only get 16GB of storage. It's nearly February and I still have no phone. If I get the phone back it certainly won't be the same device I paid for.... |

37.     Similarly, complaints to the Better Business Bureau ("BBB") regarding

Motorola spiked in the months following Lenovo's acquisition of Motorola.

38.    The BBB categorizes complaints as "resolved" or "unresolved," depending on the seller's response to them.  Since the Lenovo acquisition, the overall number of complaints and the number of unresolved BBB complaints regarding Motorola have markedly increased.



39.    Recent unresolved BBB complaints evidence Motorola's pattern and practice of inadequate warranty performance.

a.    Replacement of a defective device with another defective device or the same device in the same defective condition: "I sent my phone in for warranty repair because the top speaker sounded distorted.  It came back with the speaker still broken but the power button also broken.  I sent it in again for both issues.  It came back with the power button fixed but the speaker still sounding distorted."

11

b.      <u>Multiple unsuccessful repair attempts</u>: "I bought a Motorola Moto E.  It never worked, I sent it to Motorola FIVE TIMES to get fixed and each time they sent me back a phone that still didn't work.  In three instances they claimed they had sent me a new phone but in reality just sent me the same broken phone, claiming they made a mistake when I called them on it.  Now they are claiming my warranty has expired and I have to pay them to get the phone repaired or replaced, which is ridiculous since I never had a working phone and didn't even have possession of the phone for 99% of the warranty period since it was always with Motorola . . . ."

c.      <u>Delayed responses from Motorola about the status of warranty claims, misinformation about the time needed to repair a product, and excessive delays in repairing or replacing defective Devices</u>: "After discovering a manufacturer defect in my phone, they promised to supply a replacement device to me within 5-6 business days from my request.  8 Business days after I ordered the replacement, I called back and they advised me that the phone had not shipped yet due to being out of stock, but they guaranteed that it would ship within two additional business days.  3 Business days later, I called back and they told me that I should expect my replacement in perhaps up to 2 weeks, as they can't seem to locate a single replacement."

d.      <u>Denial of a refund or replacement device</u>: "I sent a phone in for repair using their standard exchange program.  A short time after my device arrived I was informed that they no longer had any of my model to replace it with and offered an upgrade to another model.  I agreed to that and was informed that my replacement device would ship in a few days.  A week later I followed up because I had still not received a device.  I

12

was informed they would escalate my case and I should get shipping confirmation soon. I repeated this scenario for about 5 weeks. Today I called again and demanded an answer. I got the same song and dance about escalating my case... etc. I told them that I wanted a refund and my broken phone repaired or a definitive answer as to when I would get my new device. I was told it was not possible to do either option."

        e.    <u>Charging consumers for "Advanced Exchange" warranty service, then failing to fix the product and failing to refund the fees</u>: "On 10/13/15, I opened an Advance Exchange ticket for warranty replacement . . . . I received the replacement device on 10/16/15. However, the replacement device I received was defective. When I called support, I was told that I could open a warranty replacement ticket on the new device, and keep my original device until I had received a functional warranty replacement. . . . I received the 2nd replacement device on 10/29/15, and thereafter promptly sent back my original device . . . . The device was received by Motorola on 11/9/15, and I received a confirmation email from Motorola. However, on 11/3/15, I was informed via email that I would be charged for the cost of my device, since it had not been returned. My card was charged $273.75 on 11/6/15. I expected for the debit to be reimbursed upon receipt of the device, but it never was. On 12/9/15, I called the Repair and escalation team and reported the issue, and was told that the money would be reimbursed. It never was."

    40.    On the Customer Service Scoreboard website (www.customerservicescoreboard.com), Motorola has received 388 negative comments and 22 positive comments. On a scale of 1 to 10, Motorola's customer service received a 1.6

in the category of "Issue Resolution." Motorola's overall rating on Customer Service Scoreboard is 29.37 out of 200.



### F. Facts Specific to Plaintiffs

#### i. Plaintiff Douglas Lynch

41. In December 2014, Plaintiff Lynch purchased a Motorola Moto 360 Smart Watch.

42. On September 4, 2015, the back plate of Lynch's Moto 360 cracked. That same day, Lynch began a return merchandize authorization process with Motorola. A Motorola employee informed him that processing his return and preparing shipment of a replacement product would take four business days from when Motorola received Lynch's Moto 360.

43. On September 9, 2015, Motorola confirmed it had received Lynch's Moto 360.

44. On September 21, 2015, having heard nothing from Motorola, Lynch contacted Motorola by phone and was informed that a replacement of his model was unavailable. Lynch offered to pay the difference in price between his Moto 360 and a newer model, but the Motorola representative declined.

45. In a subsequent phone call, a Motorola representative told Lynch that a replacement was being sent from Motorola's factory in China, and that delivery of that product would take a few weeks. Motorola then sent Lynch an e-mail confirming shipment

14

of Lynch's replacement product. The e-mail showed that Motorola had shipped Lynch a cheaper model of Moto 360 than the model he purchased.

46.     Lynch contacted Motorola about this discrepancy and was informed that the e-mail was erroneous and he would receive the same model he purchased.

47.     Lynch received his replacement Moto 360 in November or December of 2015. The replacement product was a cheaper Moto 360 than the model Lynch purchased. The replacement product contained a leather band; the product Lynch purchased contained a metal band.

48.     Rather than communicate further with Motorola, Lynch purchased a new smart watch from a competitor of Motorola.

    **ii.**    **Plaintiff Jariel Arias**

49.     Plaintiff Arias purchased a Motorola Moto X phone from Motorola, together with an $85 insurance policy offered by Motorola to cover accidental damage to the phone.

50.     In December 2015, after accidentally dropping his Moto X and cracking the screen, Arias sought a repair or replacement of his phone under the Motorola insurance policy he purchased.

51.     Motorola informed Arias that to use his insurance policy a security hold of approximately $535 dollars would be required and that he would also need to pay a fee of $25. Arias paid Motorola as instructed.

52.     Motorola sent Arias a replacement phone, the power and volume buttons of which intermittently stick and do not function.

53.     Within days of receiving the replacement phone, Arias sent his phone with the broken screen back to Motorola as requested.

54.     Though Motorola received Arias's broken phone, it did not refund the $535 to Arias.  He attempted on many occasions to get the $535 refunded, and even paid an additional $39 insurance deductible when Motorola told him that doing so was necessary to refund his $535.  But to date, Motorola has not refunded his money.  On many occasions, a Motorola agent informed Arias that his money had been refunded and that the problem was with his bank, which had not released the funds.  Arias contacted his bank several times.  His bank informed him that Motorola never refunded the $535.

### iii.     Plaintiff Kyle Johnson

55.     In February 2016, Plaintiff Johnson purchased a Moto X Pure Edition smartphone ("Pure Edition") from Motorola for his teenage son.  The Pure Edition can be customized at the time of purchase through the selection of colored accents and a back plate of various materials, such as wood or leather.

56.     Within a week after Johnson's son received the Pure Edition from Motorola, the Device's screen began to fail.  The screen would become garbled before going completely dark.  Johnson's son promptly initiated the warranty process with Motorola and sent his phone to Motorola for repairs.

57.     The phone that Motorola sent back to Johnson's son had exactly the same screen defect, which made the phone unusable.  In addition, the replacement phone Johnson's son received had a different back plate from the one he ordered.  And there was

16

also a new problem with the replacement phone: its power button and volume rocker switch were excessively loose and about to fall off.

58.     Johnson and his son called Motorola to report that the repair process had been unsuccessful.  In response, a Motorola agent stated that the replacement phone was free from defects.  It took approximately ten follow-up calls to Motorola's warranty department—each of which lasted approximately one hour—for the Johnsons to get through to a manager in Motorola's warranty department.  The manager promised that Motorola would fix the phone and asked Johnson to send it back in for a second repair.

59.     Johnson and his son sent the phone in, but the second replacement phone they eventually received from Motorola still had the screen defect, still had the wrong back on it, and still had the loose buttons.

60.     Johnson's son contacted Motorola again to request a non-defective replacement device.  A Motorola agent informed Johnson's son that he had been placed on a "priority list" for a replacement phone and would receive one as soon as one became available.  The agent told Johnson's son to call back periodically to check if new phones were in stock.  Johnson's son called back a week later to see if new devices were in stock and was informed that, while Motorola had received new devices, it had already shipped them to other customers.  Johnson's son was told that he would need to continue calling Motorola periodically to see if a replacement phone was available.

61.     By this point, more than two months had passed since Johnson's son initiated the warranty process.  He had gone without a functional phone during this time.

62.     Johnson then sent an e-mail to Motorola's CEO complaining of the poor level of service.  Within two hours, an "Executive Customer Relations" employee sent Johnson a code to order a new phone.  Johnson ordered a new Motorola phone for his son using the code provided, and sent the defective phone back to Motorola.

63.     Because Johnson needs to be able to reliably contact his son via cell phone, Johnson purchased a new phone for his son from one of Motorola's competitors.

### iv.     Plaintiff Janna Laverdiere

64.     Plaintiff Laverdiere, a dental graduate student, purchased a Motorola Moto X Pure Edition smartphone from Motorola on September 28, 2015.

65.     On February 12, 2016, Laverdiere sought warranty service from Motorola because the screen on her Moto X failed.  An online Motorola agent presented Laverdiere with two options for obtaining a warranty replacement.  First, Laverdiere could purchase an "Advanced Exchange" program for warranty service, which the agent told Laverdiere would provide the "quickest" replacement option.  The Advanced Exchange program requires a one-time fee of $24.99, plus a $500 security deposit for the replacement phone. The Motorola agent said that the security deposit would be refunded within five days after Laverdiere received her replacement phone.  The agent also told Laverdiere that the replacement phone from the Advanced Exchange program would be a "like new" phone that had been "subjected to quality inspections prior to shipment" and would "perform and look like a new device, just out of the box."

66.     The second warranty option the Motorola agent offered Laverdiere was a (cost-free) "Repair and Return" program, which the agent described as a "slower" process that would require Laverdiere to send in her phone to Motorola for repair work.

67.     Because Laverdiere must accept calls from patients in emergencies, Laverdiere needs a functional phone at all times. She therefore opted for the Advanced Exchange program so that she could use her defective phone, to the extent possible, while awaiting a replacement.

68.     On February 19, 2016, Laverdiere received a replacement phone from Motorola. When she inserted her SIM card from her original phone into the replacement phone, the replacement phone was unable to read the SIM card.

69.     Laverdiere contacted Motorola for warranty support. Motorola represented to Laverdiere that the phone's failure to read the SIM card was a carrier-specific issue that had to be resolved with the carrier. Laverdiere contacted T-Mobile's customer support. After a time-consuming troubleshooting session, T-Mobile reported that the problem was attributable to a defective phone. Laverdiere contacted Motorola with T-Mobile's findings. Motorola then offered to send Laverdiere a second replacement phone once she sent the first replacement phone back.

70.     On February 21, 2016, Motorola charged Laverdiere $24 for shipping the first replacement phone.

71.     On February 22, 2016, Laverdiere shipped the first replacement phone back to Motorola.

72.     By March 2, 2016, Laverdiere had not received a second replacement phone from Motorola and contacted its customer service department once again.  A Motorola representative informed her that it would take at least two more weeks to ship a replacement and that the warranty center was out of parts and could not repair the phone.

73.     On March 7, 2016, Motorola charged $531.25 to Laverdiere's credit card based on her February 12, 2016 repair request.

74.     By March 8, 2016, Laverdiere had purchased a new phone from T-Mobile for $129 because she needed to be available to her patients in emergencies.

75.     On March 20, 2016, Motorola closed Laverdiere's repair request.  At that time, Motorola had not sent a second replacement phone to Laverdiere.

76.     On April 4, 2016—nearly two months after seeking warranty service and after dozens of hours attempting to obtain warranty service—Laverdiere received a second replacement phone from Motorola.  Motorola e-mailed Laverdiere and stated the following about her phone: "We had to make extensive changes, but it's now in good working order." Within an hour after Laverdiere set up the second replacement phone, however, it began vibrating.  The screen powered down.  It never came back on again.  After another fruitless troubleshooting session with a Motorola representative, Laverdiere wrote about her experience on social media.

77.     After another week of e-mailing back and forth with Motorola, Laverdiere stated that she would contact the Better Business Bureau if Motorola did not send her a functional phone.  Motorola shipped Laverdiere a third replacement phone the next day, on April 14, 2016.

**v.** **Plaintiff Robert Mahon**

78.     Plaintiff Mahon purchased a Motorola Moto G phone from Motorola in November 2015 through Amazon.com.  Mahon chose the Moto G model because, in addition to possessing 16 gigabytes ("GB") of storage, the phone contained a memory card slot that allowed Mahon to add more storage to the phone manually, using a memory card.  Mahon spent $18.49 on a 32 GB memory card to augment the memory on his phone.  Mahon also spent $9.89 on a protective case for the Device.

79.     Within three days of receiving the phone, while on a business trip, the speaker on Mahon's Moto G failed, causing him to miss important work-related calls and calls from his family.  Mahon contacted Motorola for warranty service and was informed that the repair of his phone would take four to five days.

80.     Two weeks after sending in his phone, having heard nothing, Mahon contacted Motorola again.  A Motorola agent told Mahon that his phone was currently out of stock and that he should call again in a week.

81.     Mahon called Motorola a week later.  He was informed that his phone was not in stock and Motorola instead would send him a Moto X phone with 16 GB.  The Moto X phone lacks a memory upgrade slot.  Because Mahon needed more storage on his phone, he offered to pay the difference between a Moto X with 16 GB of storage and a Moto X with 32 GB of storage.  The Motorola agent said that such an upgrade would not be possible.

82.     Mahon then asked the Motorola agent to send back his Moto G phone, with the intention of returning it to Amazon.  The Motorola agent informed Mahon that a return would not be possible because Mahon's original phone could not be located.

83.     Days later, Mahon received an e-mail indicating that Motorola had tried to contact him about his warranty issue (though Mahon had received no call from Motorola) and that he was being sent an "upgraded" Moto X phone.

84.     Mahon thereafter received from Motorola a Moto X 16 GB phone covered in what appeared to be dirt or mud with bits of skin or some other unknown substance lodged in the spaces between the Device and the power button and the volume rocker switch.  In addition, the replacement phone's power button sometimes did not respond to user input.

**vi.     Plaintiff Jordan Potts**

85.     Plaintiff Potts sought out-of-warranty repairs from Motorola for his Motorola Nexus 6 phone with a broken screen.

86.     Motorola represented to Potts that his phone could be repaired for $195 within three to five days.  Potts initiated the repair process, and, on April 20, 2016, Motorola charged Potts's credit card $195.  That same day Motorola e-mailed Potts a shipping label. Potts sent his phone to Motorola, and Motorola received it on April 25, 2016.

87.     After receiving Potts's phone, Motorola informed Potts that it could not be repaired.

88.     When Potts requested that Motorola return his phone, Motorola responded that it could only return his broken phone if he provided an original proof of purchase.  Potts could not locate his original proof of purchase.  Motorola kept Potts's phone and the $195 he paid Motorola.

**vii.** **Plaintiff Jeffrey Sanders**

89.     In June 2015, Plaintiff Sanders purchased a Motorola X smartphone from Motorola.

90.     Approximately one month later, the phone's speaker stopped working. Sanders initiated the warranty process with Motorola and sent in his phone for repairs.

91.     The replacement phone he received from Motorola had a broken charging port that prevented the phone's battery from charging.  Sanders initiated another warranty claim with Motorola and expressed disappointment to Motorola about its warranty service. Motorola offered to upgrade Sanders to a Moto X Pure Edition phone.

92.     Sanders thereafter received a Pure Edition phone, only to find that its battery lost power at a rapid rate.  Sanders sent that Device back to Motorola three times for power management issues.  The third time Motorola sent back Sanders's Pure Edition phone, its back panel was loosely attached and about to fall off.

93.     Motorola then offered Sanders another new phone.  The screen on the phone Sanders received was cracked.

94.     Nearly a year after his initial purchase, Sanders has been unable to obtain a phone that functions.  Sanders has repeatedly asked Motorola for a refund, to no avail.

**V.**     **CLASS ACTION ALLEGATIONS**

95.     Plaintiffs bring this suit as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated (the "Class").

96.     The proposed Class and Subclasses are defined as follows:

**The Nationwide Class**: All persons in the United States who purchased a Motorola Device and who, after October 2014, sought warranty service or out-of-warranty repairs from Motorola.

**The Georgia Subclass**: All persons who purchased a Motorola Device in the state of Georgia and who, after October 2014, sought warranty service or out-of-warranty repairs from Motorola.

**The Florida Subclass**: All persons who purchased a Motorola Device in the state of Florida and who, after October 2014, sought warranty service or out-of-warranty repairs from Motorola.

**The Texas Subclass**:  All persons who purchased a Motorola Device in the state of Texas and who, after October 2014, sought warranty service or out-of-warranty repairs from Motorola.

**The Arizona Subclass**: All persons who purchased a Motorola Device in the state of Arizona and who, after October 2014, sought warranty service or out-of-warranty repairs from Motorola.

The following persons are excluded from the Class and Subclasses: (1) Defendants and their parents, subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the Class; and (3) Judges to whom this case is assigned and their immediate family members.

97.     Plaintiffs reserve the right to modify or amend the definitions of the Class and Subclass as appropriate.

98.     Certification of Plaintiffs' claims for class action treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims and because this case meets the requirements of Federal Rule of Civil Procedure 23.

99.     **Numerosity Under Rule 23(a)(1)**.  The members of the Class and Subclasses are so numerous that individual joinder of all the members is impracticable. Thousands of Class members have been damaged by Motorola's conduct described herein. The members of the Class and Subclasses can be readily identified based on records within Motorola's possession, custody, and control.

100.     **Commonality and Predominance Under Rule 23(a)(2) and (b)(3)**.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common questions include, without limitation:

        a.      Whether Motorola breached its Warranty to Plaintiffs, the Class, and the Subclasses;

        b.      Whether Motorola engaged in unfair business practices by failing to honor its warranty obligations;

        c.      Whether Motorola engaged in unfair business practices by failing to honor its obligations to consumers who paid for out-of-warranty repairs;

        d.      Whether Motorola was unjustly enriched as a result of the practices and violations described herein;

      e.      Whether Plaintiffs, the Class, and the Subclasses are entitled to damages and, if so, in what amount; and

      f.      Whether Plaintiffs, the Class, and the Subclasses are entitled to equitable relief.

101.   **Typicality Under Rule 23(a)(3)**.  Plaintiffs' claims are typical of the claims of the Class and Subclasses.  Plaintiffs, like all Class members, were subjected to Motorola's uniformly deficient warranty service.  Each Class member's claims, grounds for relief, and injury are common and typical.

102.   **Adequacy of Representation Under Rule 23(a)(4)**.  Plaintiffs are adequate Class representatives because their interests align with the interests of the proposed Class and Subclasses.  Plaintiffs have retained counsel competent and experienced in complex class actions to prosecute this action.  The interests of the Class and Subclasses will be fairly and adequately protected by Plaintiffs and their counsel.

103.   **Superiority Under Rule 23(b)(3)**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy, in that:

      a.      The prosecution of separate actions by individual Class members would create a foreseeable risk of inconsistent or varying adjudications, which would establish incompatible results and standards.

      b.      The claims of individual Class members are relatively small compared to the burden and expense that would be required to litigate their claims individually.  As such, it would be impracticable for Class members to seek redress for Motorola's wrongful conduct in separate actions.

c.     Class action treatment here will avoid waste, delay, and duplication from a multitude of individual actions and will conserve the resources of the courts.  A class action provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Breach of Express Warranty
### (On Behalf of the Nationwide Class)

104.     Plaintiffs incorporate the above allegations by reference.

105.     Motorola manufactured and sold Motorola products to Plaintiffs and Class members.

106.     At the time of sale, Motorola promised Plaintiffs and Class members that the Motorola products they were purchasing would be "free from defects for a period of 12 months from the date of original purchase."

107.     The Motorola Devices purchased by Plaintiffs and Class members were defective at the time of sale.

108.     Motorola expressly warranted at the time of sale that, with regard to any Devices manifesting defects within 12 months after purchase, Motorola would (1) repair the Device using new, used or reconditioned replacement parts; (2) replace the Device with a new or "as new"' reconditioned Device; or (3) refund the purchase price of the Device.

109.     At all relevant times, Plaintiffs and Class members relied on the promises in Motorola's Warranty.

110.    Motorola received timely notice of the breaches experienced by Plaintiffs and Class members.

111.    Motorola did not furnish an effective remedy to Plaintiffs and Class members. Despite reasonable opportunities to honor the promises in its Warranty, Motorola failed to provide Plaintiffs and Class members with conforming Devices free of defect.

112.    Motorola refused to reimburse or refund Plaintiffs and Class members or to furnish them functionally equivalent, non-defective Devices.

113.    Motorola replaced defective Devices returned by Plaintiffs and Class members with Devices with defects of their own.

114.    Motorola required Plaintiffs and Class members seeking to avail themselves of Warranty protections to bear the cost of returning defective Devices to Motorola.

115.    Motorola refused to issue refunds to Plaintiffs and Class members who attempted to avail themselves of Warranty protections but never received a functional Device from Motorola.

116.    Plaintiffs used their Devices in a manner consistent with their intended use and performed their duties under the terms of the Warranty.

117.    As a direct and proximate result of Motorola's breaches of express warranty, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.***
**(On behalf of the Nationwide Class)**

118.    Plaintiffs incorporate the above allegations by reference.

119.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

120.     Defendant Motorola is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

121.     Motorola's Devices are consumer products as defined in 15 U.S.C. § 2301(1).

122.     The Warranty that Motorola provided to Plaintiffs and Class members is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

123.     In violation of 15 U.S.C. § 2304(a), Motorola breached its Warranty by failing to repair or refund the purchase prices of defective Devices under warranty returned by Plaintiffs and Class members, or to replace such Devices with equivalent, non-defective products.

124.     Under 15 U.S.C. § 2310(e), notice of Motorola's breach of warranty need not be provided until after Plaintiffs have been appointed as Class representatives.

125.     As a direct and proximate result of Motorola's violations of the Magnuson-Moss Warranty Act, Plaintiffs and Class members have been damaged in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### Violations of the Fair Business Practices Act,
### Ga. Code Ann. § 10-1-390, *et seq.*
### (On Behalf of the Georgia Subclass)

126.     Plaintiffs incorporate the above allegations by reference.

127.     Plaintiff Lynch is a "consumer" within the meaning of Ga. Code Ann. § 10-1-392(a)(6).

128.     Lynch's purchase of a Moto 360 smart watch is a "consumer transaction[]" within the meaning of Ga. Code Ann. § 10-1-392(a)(10).

29

129.    Lynch and Defendants Motorola and Lenovo are "person[s]" within the meaning of Ga. Code Ann. § 10-1-392(24).

130.    Motorola engaged in the practices alleged herein in the course of marketing, selling, and warranting goods and services in trade and commerce.

131.    Motorola's acts and practices described herein violate Ga. Code Ann. § 10-1-393.

132.    Motorola engages in a business practice of refusing to repair or replace defective Devices returned pursuant to its Warranty, or replacing such Devices with inferior products of lesser value than the purchased product as marketed.  Motorola's business practice in this regard is unfair, unscrupulous, immoral, and oppressive to consumer purchasers.  Motorola's Warranty provides that Motorola will replace a defective Device with a like-kind Device, or repair or refund the purchase price of the defective Device.

133.    Motorola's unfair conduct in failing to uphold the terms of its Warranty involves the breach of a duty owed to the consuming public at large and harms the overall marketplace for the goods sold by Motorola.

134.    As a direct and proximate result of Motorola's unfair conduct, Plaintiff and Georgia Subclass members have been damaged in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. Ann. § 501.201, *et seq*.**
**(On Behalf of the Florida Subclass)**

135.    Plaintiffs incorporate the above allegations by reference.

136.    Plaintiffs Arias, Mahon, and Sanders are each a "consumer" as defined in Fla. Stat. Ann. § 501.203(7).

137.    Arias, Mahon, and Sanders purchased their Motorola Devices, and Motorola advertised, sold, and warranted its Devices, through "trade or commerce" as defined in Fla. Stat. Ann. § 501.203(8).

138.    Motorola's acts and practices described herein violate Fla. Stat. Ann. § 501.204.  Motorola engages in a business practice of refusing to repair or replace defective Devices returned pursuant to its Warranty, or replacing such Devices with inferior products of lesser value than the purchased product as marketed.  Motorola also charges security holds to consumers seeking warranty repairs but fails to refund these holds, in breach of its promises to consumers.

139.     Motorola's business practices in these and others respects offend public policy and are unethical, immoral, unscrupulous, oppressive, unfair, and substantially injurious to consumer purchasers.  Motorola's Warranty provides that Motorola will replace a defective Device with a like-kind Device that is new or 'as new', or repair or refund the purchase price of the defective Device.

140.    Motorola's unfair conduct in failing to uphold the terms of its Warranty involves the breach of a duty owed to the consuming public at large and harms the overall marketplace for the goods sold by Motorola.

141.    As a direct and proximate result of Motorola's unfair conduct, Plaintiffs and Florida Subclass members have been damaged in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Violations of the Texas Deceptive Trade Practices – Consumer Protection Act**
**Tex. Bus. & Com. Code Ann. § 17.01, *et seq.***
**(On behalf of the Texas Subclass)**

142.    Plaintiffs incorporate the above allegations by reference.

31

143.    Plaintiff Johnson is a "consumer" as defined in Tex. Bus. & Com. Code Ann. §
17.45(4).

144.    Defendants Motorola and Lenovo are "person[s]" as defined in Tex. Bus. &
Com. Code Ann. § 17.45(3).

145.    Motorola Devices are "goods" as defined in Tex. Bus. & Com. Code Ann. §
17.45(1).

146.    Motorola represented that its Warranty conferred or involved rights or
remedies that the Warranty did not actually have or involve, in violation of Tex. Bus. & Com.
Code Ann. § 17.46(20).

147.    Motorola falsely represented that warranty work or services had been
performed on, or parts replaced in, Devices sent in for warranty repairs, in violation of Tex.
Bus. & Com. Code Ann. § 17.45(22).

148.    When Motorola sold Devices to consumers, Motorola failed to disclose
information concerning its warranty services of which it was aware at the time, in violation
of Tex. Bus. & Com. Code Ann. § 17.45(24).  Motorola's failure to disclose such information
was material: it had the purpose and effect of inducing reasonable consumers to enter into
transactions they otherwise would not have entered into.

149.    Motorola's business practices set forth above are unfair, misleading, and
substantially injurious to consumer purchasers.

150.    Motorola's unfair and deceptive conduct involves the breach of a duty owed
to the consuming public at large and harms the overall marketplace for the goods sold by
Motorola.

151. As a direct and proximate result of Motorola's unfair and deceptive conduct, Plaintiff and Texas Subclass members have been damaged in an amount to be proven at trial.

152. Plaintiff and Texas Subclass members are also entitled to damages for their injuries because Motorola's conduct violates Tex. Bus. & Com. Code Ann. § 17.50(a)(2).

**SIXTH CLAIM FOR RELIEF**
**Violations of the Arizona Consumer Fraud Act**
**Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.***
**(On behalf of the Arizona Subclass)**

153. Plaintiffs incorporate the above allegations by reference.

154. Plaintiff Potts and Defendants Motorola and Lenovo are each a "person" as defined in Ariz. Rev. Stat. Ann. § 44-1521(6).

155. Potts's Motorola phone and Motorola's out-of-warranty repair services are "merchandise" as defined in Ariz. Rev. Stat. Ann. § 44-1521(5).

156. Motorola's sale of out-of-warranty repairs to Potts is a "sale" as defined in Ariz. Rev. Stat. Ann. § 44-1521(7).

157. Motorola represented to Potts that it would repair his phone in exchange for $195 or, if the repair proved infeasible, would return his unrepaired phone and the $195.

158. Motorola's failed to repair Potts's phone and failed to refund the $195 he paid Motorola based on its representation. Motorola's failure to repair Potts's phone or to refund his $195 as promised violates Ariz. Rev. Stat. Ann. § 44-1522.

159. As a direct and proximate result of Motorola's unlawful conduct, Plaintiff and Arizona Subclass members have been injured in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On behalf of the Nationwide Class)**

160.    Plaintiffs incorporate the above allegations by reference.

161.    Plaintiffs and Class members conferred a benefit on Motorola by purchasing and paying for Motorola Devices and by paying for Advanced Exchange and out-of-warranty programs and other fees related to the procurement of warranty service.

162.    The Motorola Devices that Plaintiffs and Class members purchased were defective.  Motorola failed to uphold the terms of its Warranty and its Advanced Exchange and out-of-warranty programs in that it did not adequately repair or replace defective Devices purchased and returned by Plaintiffs and Class members.  Nor did Motorola refund the purchase price of such Devices.  Under these circumstances, Motorola should not be permitted to retain the benefit it received from Plaintiffs and Class members.

163.    Retention by Motorola of its profits from sales of defective Devices that Motorola failed to adequately repair, replace, or refund under the terms of its Warranty or its Advanced Exchange or out-of-warranty programs, and of its profits from sales of those programs, and other related fees, would be unjust and inequitable.

164.    Plaintiffs and Class members are entitled to restitution of their loss. Motorola should be required to disgorge its ill-gotten gain.

**VII.  PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray that the Court certify the Class and Subclasses as defined herein, enter judgment

against Defendants and in favor of Plaintiffs and the Class and Subclasses, and award the

following relief:

<ul style="list-style:none">
<li>A.    Actual damages according to proof;</li>
<li>B.    Equitable relief to include restitution and an injunction requiring</li>
</ul>

Motorola to comply with the express terms of its Warranty;

<ul style="list-style:none">
<li>C.    Costs of notice to the Class;</li>
<li>D.    Reasonable attorneys' fees and costs;</li>
<li>E.    Pre-judgment interest as prescribed by law; and</li>
<li>F.    Such other and further relief the Court deems proper.</li>
</ul>

## VIII.  JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

DATED: May 18, 2016                     Respectfully submitted,

By:  */s/ Kenneth A. Wexler*

Kenneth A. Wexler
Mark R. Miller
Adam Prom
WEXLER WALLACE LLP
55 W. Monroe Street, Ste. 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 246-0022
kaw@wexlerwallace.com
mrm@wexlerwallace.com
ap@wexlerwallace.com

Daniel C. Girard (*pro hac vice* forthcoming)
Jordan Elias (*pro hac vice* forthcoming)
Esfand Y. Nafisi
GIRARD GIBBS LLP

601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846

Norman E. Siegel (*pro hac vice* forthcoming)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Phone: (816) 714-7100
Facsimile: (816) 714-7101

*Counsel for Plaintiffs and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a copy of the foregoing First Amended Class Action Complaint to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system. Those attorneys not registered with the Court's electronic filing system will be served via U.S. Mail this 18th day of May, 2016.

Date: May 18, 2016                    <u>/s/ Kenneth A. Wexler</u>