## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

DOUGLAS LYNCH, JARIEL ARIAS, KYLE
JOHNSON, JANNA LAVERDIERE,
ROBERT MAHON, and JEFFREY
SANDERS, individually, and on behalf of all
others similarly situated,

     Plaintiffs,

v.

MOTOROLA MOBILITY LLC d/b/a
MOTOROLA and LENOVO (UNITED
STATES) INC.,

     Defendants.

Case No. 1:16-cv-4524

**The Honorable Gary Feinerman**

## MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, AND APPROVAL OF NOTICE PLAN

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.................................................. 2

III.   MATERIAL TERMS OF THE SETTLEMENT AND NOTICE PLAN ...................................... 3

IV.   THE SETTLEMENT CLASSES SHOULD BE CONDITIONALLY CERTIFIED ................... 7

     A.    The Settlement Classes Meet the Requirement of Rule 23(a) ........................................... 8

     B.    The Settlement Classes Meet the Requirement of Rule 23(b)........................................ 12

     C.    The Damages Class is Ascertainable .............................................................. 14

V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ................................... 15

     A.    The Settlement Provides Substantial Injunctive and Monetary Relief ........................... 16

     B.    The Settlement Will Avoid Complex, Lengthy, and Expensive Litigation .................... 19

     C.    The Settlement is the Product of Good-Faith, Arm's Length Negotiations by Counsel Experienced in Consumer Class Actions........................................................... 19

     D.    Settlement is Appropriate Notwithstanding the Early Stage of the Litigation ............... 20

     E.    The Settlement is Free of Collusion.................................................................. 21

VI.   THE NOTICE PLAN SHOULD BE APPROVED .................................................... 21

     A.    The Notice Materials Are Easy to Understand and Provide All Relevant Information Settlement Class Members........................................................... 22

     B.    The Claim Form is Appropriate and Non-Burdensome................................................. 23

     C.    KCC is Well-Positioned to Serve as Notice Administrator ........................................... 24

     D.    The Proposed Methods of Notice Distribution are the Best Practicable Method Under the Circumstances .............................................................................. 25

VII.  CONCLUSION........................................................................................ 26

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Group. Inc. v. ACE INA Holdings, Inc.*,
    Nos. 07-C-2898 & 09-C-2026, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ..................... 7, 25

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................................................... 13

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
    616 F.2d 305 (7th Cir.1980) ........................................................................................... 15, 16, 19

*Billitteri v. Securities America, Inc.*,
    No. 3:09-cv-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)...................................... 12

*Boggess v. Hogan*,
    410 F. Supp. 433 (N.D.Ill.1975) .............................................................................................. 22

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) ................................................................................................. 14

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ..................................................................................................... 9

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985). .................................................................................................. 16

*Felzen v. Andreas*,
    134 F.3d 873 (7th Cir.1998) ..................................................................................................... 15

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D 215 (N.D. Ill. Mar. 2, 2016) .................................................................... 8, 9, 10, 23

*George v. Kraft Foods Global, Inc.*,
    251 F.R.D. 338 (N.D. Ill. (2008) ............................................................................................ 13

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583 (7th Cir. 2011) ................................................................................................... 10

*Hedges v. Earth, Inc.*,
    2015 WL 10853985 ............................................................................................................ 22, 25

*In re Allstate Ins. Co.*,
    400 F.3d 505(7th Cir. 2005) .................................................................................................... 23

*In re AT&T Mobility Data Services Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)........................................................................................ passim

*In re Sears, Roebuck and Co. Front-Loading Washer Prods. Liability Litig.*,
    No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016).................................................... 25

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ................................................................................................... 16

*Kohen v. Pacific Inv. Management Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ................................................................................................... 14

*Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO*,
    216 F.3d 577 (7th Cir. 2000) ............................................................................................... 7, 23

*Loomis v. Exelon Corp.*,
    No. 06 C 4900, 2007 WL 2060799 (N.D. Ill. June 26, 2007) ................................................ 13

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) .............................................................................................. 14, 15

*Owner-Operator Independent Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*,
 231 F.R.D. 280 (N.D. Ill. 2005) ........................................................................... 23
*Pella Corporation v. Saltzman,*
 606 F.3d 391 (7th Cir. 2010) ....................................................................... 12, 13
*Redman v. RadioShack Corp.*,
 768 F.3d 622 (7th Cir. 2014) ............................................................................ 21
Rosario v. Livaditis,
 963 F.2d 1013 (7th Cir. 1992) .......................................................................... 10
*Schulte v. Fifth Third Bank*,
 No. 09-cv-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ............. 20, 21, 23, 24
*Shelton v. Bledsoe*,
 775 F.3d 554 (3d Cir. 2015) ............................................................................ 14
*Smith v. Sprint Commc'ns Co.*,
 387 F.3d 612 (7th Cir. 2004) ................................................................ 7, 14, 19
*Spano v. The Boeing Co.*,
 633 F.3d 574 (7th Cir. 2011) ............................................................................. 9
*Swanson v. Am. Consumer Indus., Inc.*,
 415 F.2d 1326 (7th Cir.1969) ............................................................................. 8
*Wal–Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) ........................................................................................... 9
*Wilkins v. HSBC Bank Nevada, N.A.*,
 No. 14 C 190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ................................. 25
*Wong v. Accretive Health, Inc.*,
 773 F.3d 859 (7th Cir. 2014) ....................................................................... 16, 20
*Yuzary v. HSBC Bank USA, N.A.*,
 No. 12 Civ. 3693, 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ........................... 20
*Zolkos v. Scriptfleet*,
 No. 12 Civ. 8230 (GF), 2014 WL 7011819  (N.D. Ill. Dec. 12, 2014) ..... 15, 20, 22

**Other Authorities**
4 Newberg on Class Actions § 11:53 (4th ed. 2010) ............................................... 22
Manual for Complex Litigation, Fourth, § 13.12 ...................................................... 20

**Rules**
Federal Rule of Civil Procedure 23 .............................................................. passim

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Douglas Lynch, Jariel Arias, Kyle Johnson, Janna Laverdiere, Robert Mahon, and Jeffrey Sanders submit the following memorandum in support of their Motion for Conditional Certification of Settlement Class, Preliminary Approval of Proposed Class Action Settlement, and Approval of Notice Plan. Motorola does not oppose Plaintiffs' Motion.

## I.    PRELIMINARY STATEMENT

After briefing and arguing the motion to dismiss filed by Defendants Motorola Mobility LLC and Lenovo (United States) Inc. (together, "Motorola") and after months of negotiations, Plaintiffs[1]—on behalf of classes of Motorola customers ("Settlement Classes")—have entered into a settlement agreement with Motorola (the "Settlement").[2]  Plaintiffs were prepared to litigate their claims past the motion to dismiss stage, and Motorola was prepared to continue defending itself; however, both parties recognized the cost and risk of continuing litigation and the potential benefits of settlement.  Through extensive negotiations, the parties were able to agree on a resolution.

The Settlement provides robust injunctive relief that requires Motorola to make substantial improvements to the warranty service procedures in place prior to the commencement the lawsuit.  It also provides cash compensation to customers who experienced certain delays in their warranty service, regardless of whether a class member suffered an out-of-pocket loss.  In addition to providing substantial relief, the Settlement avoids the risk that Motorola will prevail

---

[1] Douglas Lynch, Jariel Arias, Kyle Johnson, Janna Laverdiere, Robert Mahon, and Jeffrey Sanders ("Plaintiffs").

[2] A copy of the settlement agreement ("Agreement" or "Settlement") is attached as Exhibit A to the Declaration of Scott Grzenczyk in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement, Conditional Certification of Settlement Class, and Approval of Notice Plan ("Girard Declaration").  Unless otherwise defined herein, capitalized terms have the meaning set forth in the Agreement.

on its motion to dismiss or that Plaintiffs will be unsuccessful in their efforts to certify a litigation class. It also provides relief to the Settlement Classes without the significant time and expense that continued litigation would entail. And because the parties did not discuss the payment of attorneys' fees and expenses prior to executing the Agreement, there is no risk that the Settlement is the result of collusion.

Notice of the Settlement will be available on Motorola's warranty website and blog. Direct email or mail notice will be, to the extent possible, prepopulated and distributed directly to potential members of the Damages Class based on Motorola's records. The Notice and claims process will be administered by Kurtzman Karson Associates ("KCC"), a leading class action settlement administration firm. All members of the Injunctive Relief Class will receive the benefits of the relief afforded by that aspect of the Settlement without the need to make any claims.

Plaintiffs request that the Court conditionally certify the Settlement Classes, appoint Girard Gibbs LLP and Wexler Wallace LLP as Class Counsel and Plaintiffs as Class Representatives, preliminarily approve the Settlement, and approve the form and manner of distributing Notice to the Settlement Classes ("Notice Plan").[3] A proposed order conditionally certifying the Settlement Classes, preliminarily approving the Settlement, approving the Notice Plan, and setting a schedule through final approval is attached.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2016, Plaintiff Douglas Lynch filed a class action complaint alleging that Motorola failed to provide warranty service consistent with its warranty obligations. On May 18,

---

[3] A copy of the declaration of Jonathan D. Carameros, Vice President of Operations at KCC ("KCC Decl."), that outlines KCC's experience and the proposed Notice Plan is attached as Exhibit C to the Grzenczyk Declaration.

2016, Plaintiffs filed a First Amended Class Action Complaint (the "Amended Complaint") broadening the scope of the putative classes by alleging claims related to a number of Motorola smart watch and cell phone devices they allegedly had purchased as had similarly situated Motorola consumers. Plaintiffs allege that Motorola has failed to provide warranty service consistent with its warranty obligations. The Amended Complaint includes claims for Breach of Warranty, Violation of the Magnuson-Moss Warranty Act, Violation of the Arizona Consumer Fraud Act, Violation of the Georgia Fair Business Practices Act, Violation of the Florida Deceptive and Unfair Trade Practices Act, Violation of the Texas Deceptive Trade Practices – Consumer Protection Act, and Unjust Enrichment.

Motorola denies all claims asserted in the Litigation, and on July 18, 2016, Motorola moved to dismiss Plaintiffs' Amended Complaint and to strike Plaintiffs' class action allegations on multiple grounds. Plaintiffs opposed Motorola's motion. The Court heard oral argument on Motorola's motion on October 19, 2016, but has not yet entered an order on the motion. The Parties have engaged in good faith, arms-length settlement negotiations for several months. As part of the negotiations, Plaintiffs requested, and Motorola provided, information concerning Motorola's warranty claim fulfillment procedures, length of time in which Motorola responds to warranty claims, customer satisfaction rates, and the extent to which Motorola's records are sufficient to identify individuals subject to Motorola's alleged warranty failures and violations

## III.    MATERIAL TERMS OF THE SETTLEMENT AND NOTICE PLAN

The parties formally executed the Agreement on August 14, 2017. All of the terms of the Settlement are the result of extensive, adversarial, and arm's length in-person negotiations between experienced counsel for both sides. As set forth in the Agreement, Plaintiffs' counsel and Defendants' counsel negotiated a proposed Settlement that, if approved, will provide substantial benefits to the following Settlement Classes:

<u>Injunctive Relief Class</u>

All persons in the United States who purchased a Motorola cell phone or smart watch ("device" or collectively, "devices") between November 1, 2012, and August 14, 2017, and who have submitted, or within the remaining warranty period submit, the device for warranty repairs that qualified as a valid warranty claim under Motorola's corresponding device warranty.

<u>Damages Class</u>

All persons in the United States who purchased a Motorola cell phone or smart watch ("device" or collectively, "devices"), submitted the device for warranty repairs that qualified as a valid warranty claim under Motorola's corresponding device warranty between November 1, 2012, until August 14, 2017, and meet at least one of the following criteria:

- An Advanced Exchange Program security deposit was charged but were never released;

- Motorola did not ship a replacement device within 10 days of receiving the Advanced Exchange Program fee;

- Motorola did not ship a repaired or replacement device within 20 days of Motorola receiving the original device; or

- Never received a repaired or replacement device and were not credited with a refund.

The Settlement provides valuable monetary and non-monetary benefits that squarely address the issues raised in the litigation. Motorola will provide several forms of cash compensation to eligible Damages Class Members:

- Repayment of Advanced Exchange Program fees collected from Damages Class Members for whom Motorola did not ship a conforming replacement device within 10 days of receiving the Advanced Exchange Program fee;

- Release and/or repayment of credit card security deposits collected from Damages Class Members pursuant to the Advanced Exchange Program, provided Motorola received the Damages Class Member's original device within 20 calendar days of Motorola shipping the replacement device and provided the returned device was the same device for which the warranty claim was made and did not have physical or liquid damage outside of what was disclosed;

- $20 cash—and a new or like-new equivalent replacement device or repayment of the purchase price, accounting for Depreciation—to Damages Class Members

who never received a repaired or replacement device and were not credited a
refund;

- $15 cash to Damages Class Members for whom Motorola did not ship a repaired
  or replacement device within 20 business days of receiving the allegedly defective
  device; and

- $20 cash to Damages Class Members for whom Motorola did not ship a repaired
  or replacement device within 30 business days of receiving the allegedly defective
  device.

To be eligible for monetary compensation, Damages Class Members must meet the previous

conditions and Motorola must not have already resolved the issues giving rise to the Damages

Class Members' claims.

Motorola will also provide several forms of non-monetary relief to Injunctive

Relief Class Members aimed at enhancing its warranty service:

- Improving its internal processes for identifying and contacting consumers whose
  claims have exceeded Motorola's standard wait period;

- Increasing call center representatives' discretion to issue credits for Motorola
  errors;

- Improving its processes for the Advanced Exchange Program to permit Motorola
  representatives to release the credit card security hold when a consumer receives a
  device that does not power up at the time of receipt and returns such device to
  Motorola;

- Improving the device return process by obtaining certain consumer information
  before allowing the consumer to generate a return merchandise authorization in
  order to provide more realistic estimated wait times and customer options to
  prevent unrealistic consumer expectations; and

- Improving its methods for determining whether the Advanced Exchange Program
  will be available for certain devices before offering expedited service.

Injunctive Relief Class Members need not submit claims to be entitled to the non-

monetary relief. Although Damages Class Members must submit a claim form to receive

monetary compensation, the Claim Form will be prepopulated, to the extent practicable based on

Motorola's reasonably available records, with information necessary for a Damages Class Member to make a claim. If Motorola is unable to determine a Damages Class Member's eligibility for monetary compensation and to prepopulate a claim form based solely on its reasonably available records, the Damages Class Member will still be entitled to submit a claim and shall provide or correct such information that is not provided by Motorola. If Motorola is unable to verify a Damages Class Member's eligibility based solely on its records and the Damages Class Member's claim form, Motorola may request that the Damages Class Member provide reasonable documentation supporting the claim. Motorola retains the right to adjudicate claims that are inconsistent with its records but shall notify the Damages Class Member and Class Counsel of such a dispute within 60 days of the Claims Submission Deadline. Within 30 days of receiving such notice, Class Counsel may contest any decision by Motorola denying a Damages Class Member's claim and present the matter to the Court for final determination if the claim remains unresolved.

The Settlement also provides for a robust Notice and administration plan, which will be paid for by Motorola separate and apart from the monetary compensation paid to Settlement Class Members. The parties have selected KCC—a highly qualified national class action services firm—to serve as the Notice and claims administrator. KCC will provide Notice to the Damages Class via email or direct, first-class mail, to the extent possible, and to maintain a case website with the Notice and other pertinent information.[4] KCC will maintain a toll-free customer service number that members of the Settlement Classes may use to obtain information

_____

[4] Motorola currently possesses contact information for what Motorola believes to be over 95% of the Damages Class Members. If information is outdated, Motorola and KCC will use reasonable efforts to determine the current contact information for each member of the Damages Class.

on the Settlement. Additionally, Motorola will post a Notice of the Settlement on its blog and on the repair tab of its website. The Notice Plan is discussed further in section VI.D. below.

## IV.     THE SETTLEMENT CLASSES SHOULD BE CONDITIONALLY CERTIFIED

"Before assessing whether the settlement is within the range of reasonableness to allow it to proceed to a final fairness hearing, the court must conduct an independent class certification analysis." *Am. Int'l Group. Inc. v. ACE INA Holdings, Inc.*, Nos. 07-C-2898 & 09-C-2026, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011). To be entitled to class certification, a plaintiff must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *Id*. Plaintiffs seek certification under Rule 23(b)(2) for the Injunctive Relief Class and Rule 23(b)(3) for the Damages Class. This method of "divided certification" has been endorsed by the Seventh Circuit. *See Lemon v. International Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 581 (7th Cir. 2000) ("The district court could certify a Rule 23(b)(2) class for the portion of the case addressing equitable relief and a Rule 23(b)(3) class for the portion of the case addressing damages.").

"The fact that the parties have reached a settlement is a relevant consideration in the class certification analysis." *In re AT&T Mobility Data Services Sales Litig.*, 270 F.R.D. 330, 340 (N.D. Ill. 2010). This is because, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004). "A court may not, however, abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23 requirements may be even more important for settlement classes." *AT&T Mobility*, 270 F.R.D. at 340. Class certification is warranted here because the Settlement Classes satisfy

7

the requirements of both Rule 23(a) and 23(b).  For purposes of the Settlement, Motorola does

not contest Plaintiffs' assertion that certification of the Settlement Classes is appropriate.

## A.    The Settlement Classes Meet the Requirement of Rule 23(a)

Rule 23(a) requires the party seeking certification to demonstrate that the members of the

class are so numerous that joinder is impracticable (numerosity); that there are questions of law

or fact common to the proposed class (commonality); that the class representatives' claims are

typical of the claims of the class (typicality); and that the representatives and class counsel will

fairly and adequately represent the interests of the class (adequacy).  *Gehrich v. Chase Bank

USA, N.A.*, 316 F.R.D 215, 224 (N.D. Ill. Mar. 2, 2016) (citing Fed. R. Civ. P. 23(a)(1)-(4)).

Each of the Rule 23(a) prerequisites is satisfied with respect to both Settlement Classes.

### 1.    Numerosity

"Although no magic number exists for satisfying the numerosity requirement, the

Seventh Circuit has held that '[e]ven if the class were limited to 40 [members] . . . that is a

sufficiently large group to satisfy Rule 23(a) where the individual members of the class are

widely scattered and their holdings are generally too small to warrant undertaking individual

actions.'"  *Gehrich*, 316 F.R.D at 224 (quoting *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d

1326, 1333 n. 9 (7th Cir.1969)).  The Damages Class contains approximately 26,000 members

and the Injunctive Relief Class includes all purchasers of the devices during the Settlement Class

Period that submitted a warranty claim (over 376,000 individuals) and potential future claimants,

and thus both Settlement Classes satisfy the numerosity requirement.

### 2.    Commonality

Commonality requires that the plaintiffs' and class members' claims "depend upon a

common contention . . . of such a nature that it is capable of classwide resolution—which means

that determination of its truth or falsity will resolve an issue that is central to the validity of each

one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "'Rule 23(a)(2) does not demand that every member of the class have an identical claim,' and some degree of factual variation will not defeat commonality provided that common questions yielding common answers can be identified." *Gehrich*, 316 F.R.D at 224-45 (quoting *Spano v. The Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011)). Here, common questions for both Settlement Classes include the scope of Motorola's obligations under its warranty, how quickly Motorola is obligated to provide warranty service, whether Motorola breached its warranty obligations by failing to provide service consistent with its warranty obligations within that timeframe, and whether Motorola has failed to return or refund Advanced Exchange Program security holds. Each of these questions is common to the class and can be resolved on a classwide basis.

### 3. Typicality

"Typicality is satisfied when a plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Gehrich*, 316 F.R.D at 224 (quotation omitted). A plaintiff's claims are typical "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Plaintiffs, like all members of the Settlement Classes, are subject to Motorola's warranty. And Plaintiffs' claims, like those of all members of the Settlement Classes, include claims that stem from Motorola's allegedly inadequate warranty service. Their claims, as reflected in the definition of the Settlement Classes, are thus typical of the members of the Settlement Classes.

### 4. Adequacy

"Adequacy involves two inquiries: '(1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel.'" *Gehrich*, 316 F.R.D at 224 (quoting *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Plaintiffs aver that they all share the same interest as other members of the Settlement Classes: obtaining injunctive relief requiring Motorola to improve its warranty service procedures (with respect to the Injunctive Relief Class) and compensation for delayed warranty service (with respect to the Damages Class). Their interests are thus aligned with, and not "antagonistic or conflicting" with, absent class members. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992). Plaintiffs are adequate and should be appointed Class Representatives. For the purposes of Settlement, Motorola does not dispute these representations.

Plaintiffs are also represented by adequate counsel. "In appointing class counsel, the court . . . must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g). Girard Gibbs LLP and Wexler Wallace LLP meet all of these criteria and should be appointed as Class Counsel.[5]

Girard Gibbs and Wexler Wallace conducted a robust investigation concerning Motorola's alleged warranty violations, including reviewing the terms of Motorola's warranty,

---

[5] This Court previously appointed Daniel C. Girard of Girard Gibbs LLP and Mark Miller of Wexler Wallace LLP as interim class counsel (Dkt. 39) after Plaintiffs addressed their qualifications and the criteria listed in Fed. R. Civ. P. 23(g). Dkt. 35-37.

speaking with large numbers of consumers, reviewing online complaint forums, and conducting legal research regarding potential causes of action against Motorola. The firms opposed Motorola's motion to dismiss and pursued discovery, and were preparing to litigate this case through trial when the parties began their settlement negotiations.

Girard Gibbs and Wexler Wallace are also experienced in prosecuting consumer class actions and have substantial knowledge of the applicable law. Girard Gibbs is distinguished as a National Tier 1 law firm for class action litigation in the 2013-2016 "Best Law Firms" lists, an annual survey published in *U.S. News & World Report* and was named to the *National Law Journal*'s "Plaintiffs' Hot List." The firm's resume, attached as Exhibit B to the Declaration of Scott Grzenczyk, describes many of the firm's successes, including in consumer protection cases. Daniel C. Girard, lead counsel for Girard Gibbs in this matter, has successfully represented plaintiffs in a range of legal settings for over 20 years, was named in *The Best Lawyers in America* (2012-2016) for his work in class action litigation and has been consistently honored as a *Northern California Super Lawyer* (2007-2017).

Wexler Wallace is a nationally-recognized leading firm in complex class action and multidistrict litigation, and attorneys at the firm have been appointed to numerous leadership positions in class action cases across the country. The firm's resume, attached as Exhibit A to the Declaration of Mark Miller, describes many of the firm's successes, including in consumer protection cases. For example, Wexler Wallace was co-lead counsel and served on the trial team in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.), which involved settlements with various defendants totaling approximately $350 million. Mark Miller, a partner at Wexler Wallace and interim class counsel in this matter, was appointed co-lead counsel in *Carter v. Allstate Insurance Company*, No. 02-CH-16092 (Cir. Ct. Cook Co. Ill.),

which involved a 38-state multi-million dollar settlement that provided substantial cash recovery on a class-wide basis.

Girard Gibbs and Wexler Wallace are prepared to devote all resources necessary to successfully managing and effectuating the terms of the Settlement for the benefit of the Settlement Classes. Even in cases where litigation has taken years and cost millions, the firms have been prepared to devote the resources necessary. *See, e.g.*, *Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F, 2011 WL 3585983, at *8 (N.D. Tex. Aug. 4, 2011) ("[Girard Gibbs] has incurred significant expenses and provided thousands of hours of diligent legal work on this case with the very real possibility of no recovery or a very limited recovery."); *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (Wexler Wallace committed the time and resources necessary to prosecute the case from inception through trial despite numerous years of litigation and millions of dollars in costs); *In re Nexium (Esomeprazole) Antitrust Litig.*, Case No. 12-md-02409 (D. Mass.) (same).

### B. The Settlement Classes Meet the Requirement of Rule 23(b)

#### 1. The Injunctive Relief Class Satisfies Rule 23(b)(2)

Certification under Rule 23(b)(2) is appropriate where a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiffs' warranty-related claims are well-suited to certification under Rule 23(b)(2). Plaintiffs allege that Motorola has failed to process and resolve warranty claims in a manner consistent with its warranty obligations, and injunctive relief regarding what steps Motorola will take under its warranty program is appropriate with respect to the class as a whole. In *Pella Corporation v. Saltzman* the Seventh Circuit affirmed certification of a Rule 23(b)(2) class in similar

circumstances.  606 F.3d 391 (7th Cir. 2010).  There, as in this case, the injunctive relief outlined the steps Pella will take pursuant to its warranty obligations.  *Id*. at 392.

It is also appropriate for the Injunctive Relief Class to include future warranty claimants. In *Pella*, for example, the Seventh Circuit held that individuals "who have not replaced their windows but might in the future because of the purported design flaw are properly members of a (b)(2) Class" because "the warranty extends to them" they would want "specific performance of the warranty." *Id*. at 395.  Courts within this District have frequently certified classes with future claimants.  As one court explained, "future class members are often included in class definitions. . . . [T]here is no shortage of cases which have certified classes incorporating future class members into their definitions." *Loomis v. Exelon Corp.*, No. 06 C 4900, 2007 WL 2060799, at *5 (N.D. Ill. June 26, 2007) (internal quotation omitted); *see also George v. Kraft Foods Global, Inc.*, 251 F.R.D. 338, 345 (N.D. Ill. (2008) ("we find that future participants may be included in the class certification").

The Injunctive Relief Class should be conditionally certified under Rule 23(b)(2) for settlement.

## 2. The Damages Classes Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The Damages Class satisfies both requirements for settlement purposes.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication."

*Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (alterations omitted). Here,

questions concerning the scope of Motorola's warranty obligations and whether Motorola

breached its warranty obligations through service delays, failure to release or refund Advanced

Exchange Program security holds, and failure to repair or replace devices under warranty go to

the heart of class members' claims. While not all Motorola customers may have received

inadequate warranty service, "a class will often include persons who have not been injured by the

defendant's conduct . . . . Such a possibility or indeed inevitability does not preclude class

certification." *Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009).

Importantly, only those Damages Class Members with valid claims will receive compensation

and the concerns with overbreadth are thus not applicable.

A class action is also the superior method of adjudicating Plaintiffs' and Damages Class

Members' claims. No class members have expressed an interest in prosecuting their actions

separately, no other litigation regarding Plaintiffs' claims has been initiated, and efficiency

weighs in favor of resolving the claims of all Settlement Class Members in this forum (where

Motorola has its principal place of business). Fed. R. Civ. P. 23(b)(3)(A)-(C). And any

management issues that might arise during trial are not present in the context of a settlement

class. Fed. R. Civ. P. 23(b)(3)(D); *Sprint*, 387 F.3d at 614. The Damages Class therefore meets

the requirements of Rule 23(b)(3) and should be conditionally certified for settlement.

### C.     The Damages Class Is Ascertainable

In addition to satisfying the requirements of Rule 23, a Rule 23(b)(3) class must also be

ascertainable before it may be certified. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657

(7th Cir. 2015).[6] An ascertainable class "must be defined clearly and that membership be

_____

[6] The ascertainability requirement does not apply to classes certified under Rule 23(b)(2). *See*
*Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015) (concluding that the nature of Rule 23(b)(2)

defined by objective criteria." *Id*. "Class definitions have failed this requirement when they were too vague or subjective, or when class membership was defined in terms of success on the merits." *Id*. The Damages Class satisfies these criteria. To be included in the Settlement Class, an individual must have (1) purchased a Motorola device, (2) submitted the device for warranty repairs according to the terms of the warranty (*i.e.* within the warranty period), and (3) are eligible for monetary compensation under the Settlement. Because these criteria are objective and an individual can readily determine whether he or she qualifies as a Damages Class Member for settlement, the Damages Class is ascertainable.

## V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

"District court review of a class action settlement proposal is a two-step process. The first step is a preliminary, prenotification hearing to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir.1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir.1998) (citation omitted); *see also Zolkos v. Scriptfleet*, No. 12 Civ. 8230 (GF), 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014) ("Preliminary approval . . . simply allows notice to issue to the class and for class members to object to or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the class members' input").

---

and the practice other federal courts "all lead us to conclude that ascertainability is not a requirement for certification of a (b)(2) class seeking only injunctive and declaratory relief") (collecting cases).

The factors courts consider when determining whether to approve a class settlement include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014). Courts "do not focus on individual components of the settlement [], but rather view them in their entirety in evaluating their fairness." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). "Additionally, a court must not forget that it is reviewing a settlement proposal rather than ordering a remedy in a litigated case, keeping in mind that the presence of more creative or traditional alternatives does not preclude settlement approval." *AT&T Mobility*, 270 F.R.D. at 340 (citing *Armstrong*, 616 F.2d at 314-15). Each of the relevant factors favors preliminary approval. The Settlement provides substantial monetary and non-monetary relief in the face of significant litigation risks, avoids complex and expensive litigation, was the result of arm's length negotiations, and is free of collusion.[7] The Settlement is well within the range of final approval.

### A. The Settlement Provides Substantial Injunctive and Monetary Relief

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Accretive*, 773 F.3d at 864 (citation omitted). "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete

---

[7] Because the parties have not yet sent the Notice, it is premature to fully assess the opposition to the Settlement or reaction of class members. *AT&T Mobility*, 270 F.R.D. at 349.

victory to the plaintiffs." *AT&T Mobility*, 270 F.R.D. 347 (internal citations omitted). The relief provided to members of the Settlement Classes is substantial, particularly in light of the potential obstacles Plaintiffs would face in achieving a favorable result through continued litigation.

Injunctive Relief Class Members will receive robust injunctive relief that will substantially improve Motorola's warranty service procedures. For example, Motorola has agreed to (1) implement a twice daily operation whereby all open work orders are reviewed and if any orders are at risk of missing the promised time for action, the process will trigger an outbound phone call to the consumer; (2) provide call center agents with the authority to waive fees associated with the Advanced Exchange Program and out-of-warranty services; (3) provide Motorola representatives with authorization to release credit card security holds when a consumer receives a device that does not power up at the time of receipt and returns such a device to Motorola; (4) provide call center agents with access to view inventory availability prior to generating a return merchandise authorization; and (5) develop the capability to offer consumers alternative and/or upgraded replacement units to avoid long wait times for replacement products.

In addition, Damages Class Members will receive robust compensation for their claims. Damages Class Members that paid for an Advanced Exchange Program fee but did not receive expedited service will receive a full cash refund of the fee. And for Damages Class Members that paid a security deposit to receive expedited service under the Advanced Exchange Program, returned their original device in accordance with the program rules, and did not have their security deposit released, Motorola will either release the credit card hold or provide a cash refund of the full amount of the security deposit. Damages Class Members that experienced warranty service delays will also receive either $15 or $20 cash (depending on the length of the

service delay) regardless of whether the delay resulted in out-of-pocket losses. And Damages Class Members that never received a replacement device will be entitled to full relief plus an additional $20.

The Settlement provides the above relief while avoiding the risk that Plaintiffs might not prevail on some or all of their claims and members of the Settlement Classes would receive nothing. In its motion to dismiss (ECF No. 28, "MTD"), Motorola has sought dismissal of all of Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(6), 12(b)(1), 12(f), and 23. MTD at 5-10. Motorola argues that Plaintiffs have not adequately pled, and will not be able to establish, reliance as required for a breach of warranty claim; that the damage to some Plaintiffs' phones was not covered by Motorola's warranty; that Plaintiffs have not satisfied the heightened pleading requirements of Rule 9(b); and that Plaintiffs cannot plead a nationwide claim for unjust enrichment. *Id.* While Plaintiffs believe that they would prevail on each of their claims in litigation, Motorola has presented non-frivolous arguments that, if accepted by the Court, would result in the dismissal of Plaintiffs' Amended Complaint in its entirety. The Settlement provides substantial relief to class members in the face of these significant litigation risks.

Motorola's standing and class certification challenges are also resolved through the Settlement. Motorola asserted that Plaintiffs lacked standing to pursue relief for (1) class members other than those residing in Arizona, Florida, Georgia, Massachusetts, and Texas and (2) class members that purchased products other than those purchased by Plaintiffs. MTD at 3-4. While Plaintiffs disagree with Motorola's arguments, the Settlement overcomes these issues by providing nationwide relief to all Motorola customers. Motorola also challenged Plaintiffs' class allegations on the grounds that each class members' experience with Motorola's warranty department will vary, class members would not be able to show that they suffered the same

injury, and the Court will need to apply the laws of all fifty states to Plaintiffs' claims. MTD at 10-15. While Plaintiffs believe that they would succeed in certifying their proposed litigation class (or subclasses), they recognize that certification in consumer fraud and warranty cases such as this one is by no means guaranteed. The Settlement overcomes many of these risks by providing relief on a nationwide basis and avoiding any manageability issues that could arise during litigation. *See Smith*, 387 F.3d at 614 (noting that a settlement avoids potential manageability problems that would arise in litigation).

### B. The Settlement Will Avoid Complex, Lengthy, and Expensive Litigation

The litigation is in its preliminary stages and continued litigation would likely involve, at a minimum, amended complaints and further motions to dismiss, extensive party discovery and related motion practice, third-party discovery of Motorola's vendors, class certification and possible appeals, summary judgment, and trial. Under the current case schedule, dispositive motion briefing would not be complete until November 15, 2017. The current schedule would, however, need to be extended in the event the Settlement is not approved. Taking the case through trial would therefore likely take over a year (not counting appeals) and the parties would incur substantial expenses, including the costs of expert reports and testimony.

### C. The Settlement Is the Product of Good-Faith, Arm's Length Negotiations by Counsel Experienced in Consumer Class Actions

When evaluating the fairness of a settlement, a "court is entitled to rely heavily on the opinion of competent counsel." *Armstrong*, 616 F.2d at 325. The Settlement was reached by counsel experienced in class action litigation who have concluded that the Settlement is in the best interests of the Settlement Class. As further detailed in Section IV.A.4, Girard Gibbs LLP and Wexler Wallace LLP have a long track record of successfully prosecuting consumer class actions.

Counsel for Motorola and Plaintiffs engaged in months of sometimes contentious negotiations, often in person, in which both sides advocated strongly for their clients and were prepared to walk away from the settlement if certain provisions were not included. Plaintiffs' counsel, for example, made clear that they were prepared to litigate this matter if Motorola was not willing to provide cash compensation, which it eventually agreed to do.

### D. Settlement Is Appropriate Notwithstanding the Early Stage of the Litigation

Although the Settlement was reached relatively early in the proceedings, courts "encourage parties to settle class actions early, without expending unnecessary resources." *Scriptfleet*, 2014 WL 7011819, at *2 (citing *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013)). "The lack of discovery prior to settlement . . . does not preclude a court from approving a settlement." *AT&T Mobility*, 270 F.R.D at 350; *see also Accretive*, 773 F.3d at 864 (affirming approval of settlement reached where motion to dismiss was pending and no formal discovery had occurred); *Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *4 (N.D. Ill. Sept. 10, 2010) (granting preliminary approval where no formal discovery had occurred).

Here, Motorola has offered broad injunctive relief and monetary compensation for certain claims and the classes were unlikely to benefit from lengthy and expensive litigation. While the parties proceeded with limited formal discovery, as part of the settlement negotiations Motorola provided information that went to core issues of liability and class composition. This "confirmatory discovery" enabled Plaintiffs to understand the scope of Motorola's alleged warranty service issues and how they impact members of the Settlement Classes. *See* Manual for Complex Litigation, Fourth, § 13.12 ("The benefits of settlement are diminished, however, if it is postponed until discovery is completed. A better approach may be to target early discovery at information needed for settlement negotiations."). The lack of extensive formal discovery is

particularly unproblematic where, as here, there is no evidence of collusion among the parties. *Fifth Third Bank*, 2010 WL 8816289, at *4; *see also* Section V.E. (discussing non-collusive nature of settlement).

### E.      The Settlement Is Free of Collusion

There is no indication that the Settlement is tainted by collusion.  To the contrary, the record establishes that Plaintiffs' counsel negotiated the Settlement with only the interests of the Settlement Classes in mind, and not their own.

The parties have not discussed the amount of attorneys' fees, expenses, and service awards that Plaintiffs may be entitled to (Grzenczyk Decl., ¶ 8) and the Settlement does not include a "clear sailing" provision, which is often a hallmark of collusive settlements.  *See Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014) (discussing clear sailing provisions).  Instead, Plaintiffs will submit a fee application that Motorola is free to contest and Motorola will pay any attorneys' fees, expenses, and class representative payments awarded by the Court separately from the compensation to which class members are entitled.

The limited scope of the release is further evidence of the non-collusive nature of the parties' negotiations.  Because Class Members will be eligible to receive monetary compensation only for certain issues (those mainly related to the Advanced Exchange Program and warranty service delays), the settlement only releases claims for monetary compensation for those issues. There are, therefore, no Class Members whose rights were sacrificed in order achieve a settlement.

## VI.     THE NOTICE PLAN SHOULD BE APPROVED

The parties request that the Court approve the Notice Plan for distributing Notice of the Settlement to members of the Settlement Classes and receiving claims.  The Notice and accompanying materials provide all relevant information to members of the Settlement Classes

in an easy-to-read format, the claim form is straightforward, KCC is a well-respected claims administrator that will manage the distribution of Notice and filing of claims, and the methods for distributing the Notice are the best practicable under the circumstances.  The Notice Plan meets all the requirements of Rule 23.

### A. The Notice Materials Are Easy To Understand and Provide All Relevant Information to Damages Class Members

While notice of class action settlement "need not explore all of the underlying issues in the lawsuit," it must "adequately put class members on notice of the proposed settlement." *Scriptfleet*, 2014 WL 7011819, at *6 (quoting *Boggess v. Hogan*, 410 F. Supp. 433, 443 (N.D.Ill.1975)); *see also* 4 Newberg on Class Actions § 11:53 (4th ed. 2010) ("The notice need not be unduly specific.  The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprize interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.").  Here, the Notice provides essential information concerning the Settlement Classes and the Settlement and should be approved.

The Summary Notices that Class Members will receive—which are attached as Exhibit 1 to the Agreement—uses large, bold font to advise readers that they may be a part of the Settlement Classes and provides the basic claims in the litigation, the definitions of the Settlement Classes (and relevant exclusions), and the material terms of the Settlement.  They also explain Class Members' rights object to the Settlement[8], and for Damages Class Members it explains that they have the right to opt out of the monetary portion of the Settlement as well as

---

[8] At the request of Settlement Class Counsel or counsel for Motorola, the Court may order the deposition of any objecting class member.  *Hedges v. Earth, Inc.*, 2015 WL 10853985, at *1.

the steps they need to take to submit a claim for monetary relief.[9]  The Long-Form Notice—

which is attached as Exhibit 2 to the Agreement—will be available on the settlement website and

will be mailed to Class Members upon request.  The Long-Form Notice is modeled after the

Federal Judicial Center's template notice and contains additional information regarding the

litigation, the parties' primary claims and defenses, and the Settlement Classes in concise, easily

understood language.  It also displays contact information for KCC and for Class Counsel, and

advises members of the Settlement Classes that they may appear in the litigation through their

own attorney.

        The Notice satisfies Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e).  *See Gehrich*,

316 F.R.D. at 232 (finding notice adequate where is "included in bold font the relevant deadlines

for submitting a claim and opting out of the class or objecting to the settlement, and explained

the claims that the settlement would release").

### B.       The Claim Form Is Appropriate and Non-Burdensome

        To receive monetary compensation under the Settlement, Damages Class Members will

need to complete and submit a claim form.  "[R]equiring claimants to submit claim forms in

order to receive payment is an ordinary and unobjectionable feature of modern class action

litigation."  *Fifth Third Bank*, 2010 WL 8816289, at *4.  A claim form is appropriate in this case

because Motorola does maintain records than can be reasonably used to identify class members

---

[9] Consistent with well-settled authority, members of the Injunctive Relief Class will not be
provided the opportunity to opt out of the injunctive relief portion of the settlement.  *See In re
Allstate Ins. Co.*, 400 F.3d 505, 506 (7th Cir. 2005) ("A Rule 23(b)(2) class action does not
require giving class members notice of the suit and a chance to opt out of it and bring their own,
individual suits; a Rule 23(b)(3) class action does."); *Lemon*, 216 F.3d at 581 (noting that in
divided certification cases, class members are given the opportunity to "opt out of the damages
claims" for the portions of the class certified under Rule (b)(3)); *Owner-Operator Independent
Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 286 (N.D. Ill. 2005) (holding that
in divided certification case, "opt-out rights of class members [are] limited, of course, to the Rule
23(b)(3) aspects of the litigation").

that were subject to service delays, or the reasons for such delays. *See Fifth Third Bank*, 2010 WL 8816289, at *4 ("claim forms are most appropriate when class members are required to provide . . . information not in the defendants' records"). In some instances, for example, Motorola does not immediately ship a repaired or replacement phone to a customer because the warranty department and the customer are discussing the repairs that need to get made. And information concerning the dates of shipment and the warranty service process are contained in individual entries within Motorola's warranty database.

The Claim Forms, copies of which are attached as Exhibit 3 to the Agreement, are also prepopulated with information regarding the Damages Class Member's claims and are straightforward and easy to understand. Motorola's records are complete and detailed enough to identify consumers who may have experienced the alleged warranty delays, enabling it to prepopulate the claims forms with potential class members' product and contact information, as well as identify the potential category of monetary compensation that the consumer may be entitled to.[10] If Damages Class members need assistance completing the form, they will be able to contact the settlement administrator or class counsel for assistance.

### C.    KCC Is Well-Positioned To Serve as Notice Administrator

The parties propose to have KCC serve as the Settlement Administrator. KCC is a national class action administration firm that specializes in class action settlement administration. KCC Decl., ¶¶ 4-5. Due to its size, KCC manages and carries out all of its administration services—from mailing to call centers—in-house, which increases the efficiency and

---

[10] Motorola believes that its records are sufficiently complete to send prepopulated direct Notice to 95% Damages Class Members. Nonetheless, should a consumer believe that he or she may be entitled to relief even though Motorola's records do not reflect the same, the consumer is still entitled to submit a claim form for monetary compensation and will have full Notice of the Settlement and instruction on procedures for submitting a claim via publication of the Settlement on Motorola's blog and repair tab of its website.

effectiveness of its services. *Id*., ¶ 4. Jonathan D. Carameros has managed more than 400 class action settlements, including notification and claims processing. *Id*., ¶ 2. Courts in this district have repeatedly appointed KCC to serve as settlement administrator in class actions. *See*, *e.g.*, *In re Sears, Roebuck and Co. Front-Loading Washer Prods. Liability Litig.*, No. 06 C 7023, 2016 WL 772785, at *5 (N.D. Ill. Feb. 29, 2016); *Earth Inc.*, 2015 WL 10853985, at *1; *ACE INA*, 2011 WL 3290302, at *10. *See also Id*., ¶ 5 (since 1984, KCC has been retained to administer more than 6,000 class actions).

### D. The Proposed Methods of Notice Distribution Are the Best Practicable Method Under the Circumstances

As detailed above, the parties propose to provide members of the Damages Class with direct notice of the Settlement via email and, for those class members for which Motorola does not have an email address or the email is returned as undeliverable, direct US mail. Courts in this district have routinely approved similar Notice Plans. In *AT&T Mobility*, for example, Judge St. Eve described an identical notice plan as "thorough" held that it "satisfies the requirements of Rule 23." 270 F.R.D. at 352-53; *see also Wilkins v. HSBC Bank Nevada, N.A.*, No. 14 C 190, 2015 WL 890566, at *3, *8-9 (N.D. Ill. Feb. 27, 2015) (objections to settlement administration were "not well-founded" where "more than 79% of the class members received direct notice through email or U.S. mail"). The more inclusive long-form notice will be available to members of the Settlement Class upon request.

In addition, KCC will maintain a settlement website that contains all pertinent information, deadlines, responses to frequently asked questions, and copies of Plaintiffs' Amended Complaint, the settlement agreement, the long-form notice, the motion for preliminary approval, and other important documents. KCC Decl., ¶ 12. KCC will also provide automated

and live telephone support that Settlement Class Members can use to ask questions and obtain assistance with claims filing. *Id.*, ¶ 13.

The Notice Plan satisfies the requirements of Rule 23 and should be approved.

## VII.    CONCLUSION

For the forgoing reasons, Plaintiffs respectfully ask the Court to conditionally certify the Settlement Classes, appoint Girard Gibbs LLP and Wexler Wallace LLP as Class Counsel and Plaintiffs as Class Representatives, preliminarily approve the Settlement, and approve the Notice Plan.


DATED: August 14, 2017                          Respectfully submitted,


/s/ *Kenneth A. Wexler*
Kenneth A. Wexler
Mark R. Miller
Adam Prom
**WEXLER WALLACE LLP**
55 W. Monroe Street, Ste. 3300
Chicago, Illinois 60603
Telephone: (312) 346-2222
Facsimile: (312) 246-0022
kaw@wexlerwallace.com
mrm@wexlerwallace.com
ap@wexlerwallace.com

Daniel C. Girard (*pro hac vice*)
Jordan Elias (*pro hac vice*)
Scott M. Grzenczyk (*pro hac vice pending*)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
dcg@girardgibbs.com
je@girardgibbs.com
smg@girardgibbs.com

*Attorneys for Individual and Representative*

*Plaintiffs Douglas Lynch, Jariel Arias, Kyle Johnson, Janna Laverdiere, Robert Mahon, and Jeffrey Sanders*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2017, a true and correct copy of the foregoing

document was filed on the Court's CM/ECF system, and was thereby made available to counsel

of record.

/s/ *Kenneth A. Wexler*
Kenneth A. Wexler